IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| CHARLES F., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:23-cv-593-SMD |
| ) | |
| MICHELLE KING,[1] ) | |
| *Acting Commissioner of Social Security*, ) | |
| ) | |
| Defendant. ) | |

**<u>OPINION & ORDER</u>**

Plaintiff Charles F. ("Plaintiff") filed for a period of disability and disability insurance benefits ("DIB") on October 17, 2018, alleging he became unable to work beginning April 1, 2017. Tr. 237. Plaintiff's application was denied at the initial administrative level, as well as on reconsideration. Tr. 15, 1. He then requested and received a hearing before an Administrative Law Judge ("ALJ"), who found that Plaintiff was not disabled. Tr. 16. The ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") after the Appeals Council declined review. *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Plaintiff appealed that decision under 42 U.S.C. § 405(g), and the Court reversed the Commissioner's decision and remanded the case for further proceedings. *Plaintiff v.*

---

[1] Michelle King, the Acting Commissioner of the Social Security Administration, is substituted for Martin J. O'Malley as Defendant in her official capacity in this action. *See* FED. R. CIV. P. 25(d)(1).

*Kijakazi*, 2022 WL 4104348 (M.D. Ala. Sept. 8, 2022).

On remand, the Appeals Council ordered the ALJ to hold a new hearing. Tr. 780. After the second hearing, the ALJ issued a new decision that found that Plaintiff was not disabled as of his alleged onset of April 1, 2017 through June 30, 2021, but was disabled as of July 3, 2023, upon reaching 55 years of age. Tr. 616. Plaintiff now appeals the new decision under 42 U.S.C. § 405(g). For the following reasons, the undersigned REVERSES and REMANDS the Commissioner's decision for further proceedings.[2]

I.     STATUTORY FRAMEWORK

The Social Security Act establishes the framework for determining who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). In making a benefits determination, an ALJ employs a five-step process:

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or medically equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a); 20 C.F.R § 416.920(a)(4). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of not disabled." *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

---

[2] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned Chief United States Magistrate Judge conducting all proceedings and entering final judgment in this appeal. Pl.'s Consent (Doc. 29); Def.'s Consent (Doc. 28).

[3] *McDaniel* is a SSI case. SSI cases arising under Title XVI of the Social Security Act are appropriately

A claimant bears the burden of proof through step four. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996). The burden shifts to the Commissioner at step five. *Id.*

To perform the fourth and fifth steps, the ALJ must first determine the claimant's Residual Functional Capacity ("RFC"). *Phillips v. Barnhart*, 357 F.3d 1232, 1238-39 (11th Cir. 2004). A claimant's RFC is what the claimant can still do—despite his impairments—based on the relevant evidence within the record. *Id.* The RFC may contain both exertional and non-exertional limitations. *Id.* at 1242-43. Considering the claimant's RFC, the ALJ determines, at step four, whether the claimant can return to past relevant work. *Id.* at 1238. If a claimant cannot return to past work, the ALJ considers, at step five, the claimant's RFC, age, education, and work experience to determine if there are a significant number of jobs available in the national economy the claimant can perform. *Id.* at 1239. To determine if a claimant can adjust to other work, the ALJ may rely on (1) the Medical Vocational Guidelines ("Grids")[4] or (2) the testimony of a vocational expert ("VE").[5] *Id.* at 1239-40.

---

cited as authority in Title II cases, and vice versa. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) (per curiam) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

[4] Grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. *See* 20 C.F.R. pt. 404 subpt. P, app. 2. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

[5] A vocational expert is an "expert on the kinds of jobs an individual can perform based on his or her capacity and impairments." *Phillips*, 357 F.3d at 1240.

## II.   STANDARD OF REVIEW

A federal court's review of the Commissioner's decision is limited. A court will affirm the Commissioner's decision if the factual findings are supported by substantial evidence and the correct legal standards were applied. *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999) (citing *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997)). A court may reverse the Commissioner's final decision when it is not supported by substantial evidence or the proper legal standards were not applied in the administrative proceedings. *Carnes v. Sullivan*, 936 F. 2d 1215, 1218 (11th Cir. 1991). Further, reviewing courts are required to give deference to factual findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F. 2d 1143, 1145 (11th Cir. 1991).

"Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Despite the limited nature of review, a court must scrutinize the record in its entirety and take account of evidence that detracts from the evidence relied on by the ALJ. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987); *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986). However, a court may not decide the facts anew or substitute its judgment for that of the Commissioner. *Cornelius*, 936 F. 2d at 1145.

### III. ADMINISTRATIVE PROCEEDINGS

Plaintiff was forty-three years old on his alleged onset date. Tr. 26. He has a limited education[6] and past work as a brick mason helper. Tr. 25. Plaintiff alleges disability due to multiple medical issues including amputated toes, a crushed foot, a broken collar bone, inability to raise his left arm above the waist, pain in the neck, dizzy spells, anxiety, and depression. Tr. 263. Additionally, Plaintiff asserts he is illiterate. Tr. 262.

In the administrative proceedings before the Commissioner pursuant to the original remand, the ALJ made the following findings with respect to the five-step evaluation process for Plaintiff's disability determination. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset. Tr. 618. At step two, the ALJ found that Plaintiff suffers from the following severe impairments: "degenerative disc of the spine, amputation of the 4th and 5th toes on the right foot, a broken collar bone that has healed, bilateral hernia, a specific learning disorder with impairment in reading; an anxiety disorder, and a depressive disorder." *Id.* At step three, the ALJ found that Plaintiff has not had an impairment or combination of impairments that medically equals the severity of the listed impairments. *Id.*

The ALJ proceeded to determine Plaintiff's RFC as follows:

[T]he claimant has had the following residual functional capacity: he can lift and carry ten pounds frequently and twenty pounds occasionally. He can sit for about six hours out of an eight hour workday, and he can stand and walk for about four hours out of an eight hour workday. He can occasionally push

---

[6] Plaintiff asserts he has a third-grade education but testified at the second hearing before the ALJ that he progressed as far as the eighth grade. Tr. 673. He further testified that he received "special education" but that he "can't read and write." *Id.*

> and pull with the right lower extremity. He can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but he should never climb ladders, ropes, and scaffolds. He can frequently reach in front and laterally bilaterally. He can occasionally reach overhead bilaterally. He should be limited to occasional exposure to extreme heat, extreme cold, and vibration. He cannot work around hazards such as unprotected heights and uncovered moving machinery. He can understand, remember, and carry out simple, routine, and repetitive tasks with detailed, but uninvolved, instructions that do not require independent decision making and that **have no requirement for reading or writing and allow for only verbal instructions**. His work should have only occasional changes in routine. He should be limited to occasional, superficial interaction with co-workers and supervisors. He should have no required interaction with the general public. He should work more with things than people.
> [emphasis added]

Tr. 620. At step four, the ALJ found that, since April 1, 2017, Plaintiff has been unable to perform any past relevant work. Tr. 633. She also found that Plaintiff is illiterate and is closely approaching advanced age. Tr. 634. At step five, the ALJ utilized the testimony of a VE and determined that considering Plaintiff's "age, education, work experience, and residual functional capacity," he could perform work as a "production assembler," as a "merchandise/price marker," and as a "sub-assembler."[7] Tr. 634-35. All three jobs exist in significant numbers in the national economy. Tr. 635. Accordingly, the ALJ concluded that Plaintiff was not under a disability at any time from his alleged onset date through his date last insured. *Id.* The ALJ did find, however, that Plaintiff became disabled on July 3, 2023, upon reaching the age of 55. *Id.*

---

[7] At the hearing, the VE testified that the merchandise/price marker job could not be performed with the standing/walking limitation imposed in Plaintiff's RFC. Tr. 691. Plaintiff avers that the ALJ erroneously substituted merchandise/price marker job for the small products assembly job, which the VE identified as a substitute job at the hearing. *Id.* For the sake of clarity, this opinion addresses both jobs.

## IV. ANALYSIS

Plaintiff argues that the ALJ failed to resolve seven conflicts between the VE's testimony and the occupational information contained within the Dictionary of Occupational Titles ("DOT") regarding the jobs he could perform. Pl.'s Br. (Doc. 21) pp. 4-21. Because the undersigned finds that the first unresolved conflict identified by Plaintiff requires remand, only that conflict will be addressed on the merits.

### A. The ALJ failed to resolve the conflict between Plaintiff's illiteracy and the DOT's reading and writing requirements of each job identified.

At step five, the ALJ is obligated to identify and resolve any apparent inconsistencies between the DOT data and the VE's testimony pertaining to jobs a claimant can perform. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018); SSR 00-4p, 2000 WL 1898704. The VE's assertion that her testimony comports with the contents of the DOT is insufficient to carry this burden. *Washington*, 906 F.3d at 1362. An inconsistency is apparent if "a reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id.* at 1365. "Put another way, if a conflict is reasonably ascertainable or evident, the ALJ is required to identify it, ask about it, and resolve it in his opinion." *Id.* at 1366. An ALJ's failure to fulfill this obligation means her decision is not supported by substantial evidence. *Id.* at 1362.

At the hearing, the ALJ posed several hypotheticals to the VE, all of which included Plaintiff's limitation of no reading or writing. Tr. 686-694. In response to the ultimate hypothetical, the VE testified that Plaintiff could work as a production assembler, small

7

parts assembler, and subassembler. Tr. 691. The VE also testified that her responses were consistent with the DOT because "the DOT or COJ does not really define the need for reading or writing [for these jobs]." Tr. 694. The ALJ partially adopted the VE's testimony, finding that Plaintiff could work as a production assembler, merchandise/price marker,[8] or subassembler. Tr. 635.

      Plaintiff argues that there is an apparent inconsistency between the VE's testimony and the DOT regarding the literacy requirements of the identified positions. Plaintiff points out that all the jobs identified by the VE and adopted by the ALJ have literacy requirements that conflict with his illiteracy. Pl.'s Br. (Doc. 21) pp. 8-9. The positions of production assembler, small parts assembler, and merchandise/price marker require a language level of one, meaning that the employee must ". . . recognize meaning of 2,500 (two or three syllable) words. Read at rate of 95-120 words per minute. . . print simple sentences containing subject, verb, and object, and series of numbers, names, and addresses." DOT 706.687-010, 1991 WL 679074; 209.587-034, 1991 WL 671802; 706.684-022, 1991 WL 679050. The position of subassembler imposes a higher language level of two, which requires a "passive vocabulary of 5,000-6,000 words. Read[ing] at rate of 190-215 words per minute. Read[ing] adventure stories and comic books, looking up unfamiliar words in the dictionary for meaning, spelling, and pronunciation. Read[ing] instructions for assembling model cars and airplanes. . .write compound and complex sentences, using

---

[8] The VE testified at the hearing that Plaintiff could not perform the merchandise/price marker position with the four hour standing/walking limitation imposed in the RFC. Tr. 691.

cursive style, proper end punctuation, and employing adjectives and adverbs." DOT 729.684-054, 1991 WL 679729. Plaintiff points out that these job requirements directly conflict with the ALJ's explicit finding that he is illiterate. Tr. 634. The Court agrees.

As noted above, an inconsistency is apparent if it appears to conflict with the DOT, at which point the ALJ is obligated to provide a reasonable explanation for the inconsistency. *Washington*, 906 F.3d at 1363; SSR 00-4p, 2000 WL 1898704. Here, there is obviously a conflict between Plaintiff's illiteracy, the VE's testimony that ". . .the DOT or COJ does not really define the need for reading or writing," and the language level requirements imposed by the DOT on the jobs adopted by the ALJ. *Torres v. Saul*, 2021 WL 280066, at *4 (M.D. Pa. Jan. 4, 2021) ("[G]iven that the ALJ determined that [the claimant] was illiterate and the VE testified that [the claimant] can perform the jobs which, according to the DOT, require a minimum level of proficiency in English, there is a conflict.") (internal quotation marks and citation omitted). Further, the VE was aware of Plaintiff's illiteracy, as the ALJ limited Plaintiff to no reading in all hypotheticals posed to the VE and the VE testified that Plaintiff's illiteracy disqualified him from the position of addresser Tr. 692.[9] Thus, there was—at the very least—an apparent conflict between the VE's testimony and the DOT regarding the jobs Plaintiff could perform due to his illiteracy. *See Willis v. Kijakazi*, 2022 WL 4242523, at *4-5 (E.D.N.C. Aug. 19, 2022) (finding an

---

[9] The addresser position has the same level two language requirement as the subassembler position. DOT 209.587-010.

9

apparent conflict when a VE testified that an illiterate claimant could perform jobs for which the DOT required a language level of 1 or 2).

The ALJ did not address this conflict in her opinion. Instead, at step five the ALJ adopted the VE's testimony and asserted that "the [VE]'s testimony is consistent with the information in the [DOT]." Tr. 635. This statement falls short of the ALJ's duty to explain her decision by failing to acknowledge and resolve the conflict set forth above. *Frazier v. Kijakazi*, 2022 WL 950649, at *4 (M.D. Fla. Mar. 30, 2022) (reversing and remanding the Commissioner when the ALJ failed to acknowledge or resolve a conflict between the DOT and the VE's testimony). As such, the Court cannot meaningfully review the ALJ's decision without further explanation. *Hernandez v. Comm'r Soc. Sec.*, 2021 WL 3617405, at *4 (M.D. Fla. Aug. 16, 2021) (reversing and remanding the Commissioner's decision when the court could not meaningfully review the ALJ's decision that the plaintiff could perform the identified roles despite being illiterate); *Burton v. Astrue*, 2012 WL 1184425, at *5-6 (D. Me. Apr. 6, 2012) (R&R adopted, 2012 WL 1415616) (reversing and remanding Commissioner when the claimant's reading capacity as found by the ALJ conflicts with the DOT requirements for the jobs at issue). Accordingly, the case must be remanded.[10]

---

[10] To be sure, the Commissioner argues that the VE and ALJ resolved the conflicts between the DOT and the VE's testimony during the hearing. Comm'r's Br. (Doc. 25) p. 6. However, nowhere in the portions of the record identified by the Commissioner do the ALJ or VE discuss the specific conflict between the DOT and the VE's testimony. Tr. 634-35, 686-94. Instead, the ALJ adopted the testimony of the VE and found it consistent with the DOT without addressing Plaintiff's illiteracy or the reading requirements of the DOT. Tr. 635. The VE's testimony that a claimant can perform a job does not, without explanation, trump the job requirements listed in the DOT. *Frazier*, 2022 WL 950649, at *4; SSR 00-4p, 2000 WL 1898704, at *2. Instead, to resolve a conflict, the ALJ must go beyond the testimony of the VE and provide an adequate explanation of the conflict and her resolution thereof, which the ALJ did not do. *See Washington*, 906 F.3d at 1366 (requiring the ALJ to reasonably resolve conflicts between the VE's testimony and the DOT).

## V. CONCLUSION

As explained above, the undersigned finds reversible error in the Commissioner's decision. Therefore, the decision is REVERSED and REMANDED for further proceedings consistent with this opinion. A separate judgment will issue.

DONE this 4th day of February, 2025.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE